MARY SPARNON AND JOHN SPARNON, PLAINTIFFS, v. SAMUEL VERMEULEN, DEFENDANT.

Decided July 22, 1931.

For the rule, *Harold A. Price* and *William A. Dolan.*

Opposed, *George R. Vaughan* and *Ackerson J. Mackerly.*

MACKAY, C. C. J. Two separate cases were consolidated for trial. The judgment record is not before me. My recollection is that the jury found John Sparnon guilty of contributory negligence so that there was no recovery so far as he was concerned against the defendant. A verdict was rendered, as I recall it, in favor of Mary Sparnon against the defendant in the sum of $5,500. A rule to show cause was granted with exceptions reserved.

Under an act of the legislature passed this year, rules to show cause in the Supreme Court are heard before the Circuit judge who presided at the trial.

Defendant contends that (1) the verdict is contrary to the weight of the evidence, and (2) the verdict is excessive.

I have examined the testimony very carefully and am satisfied the jury could have found John Sparnon and Samuel Vermeulen guilty of negligence.

As to the second point that the verdict is excessive, I find that the plaintiff Mary Sparnon was thrown on the concrete road, striking her face and causing a concussion of the brain and cut over the right eye which required five stitches; that there were two cuts on each knee and her shoulder, back, nose and ankles were discolored; that plaintiff's bowels have not been functioning properly since the accident; that she spent two days and two nights in the hospital; that she could walk around before the accident, though she stumbled occasionally; that she could take her bath and care for herself personally and do various kinds of housework before she was injured; that prior to the accident she could raise both arms normally and now she can only raise them a little bit; that it is necessary for her to get up three or four times a night and that sharp pains come into her right eye.

Mary Sparnon, her husband, nephew and another relative testified that she could cook, go to the toilet and walk around before the accident though she stumbled occasionally.

There is no doubt that plaintiff was suffering from progressive muscular atrophy and had been for a period of about two years or a little longer. It also appears that this disease takes from five to fifteen years to run its course and if plain-

tiff was suffering therefrom for a period of from two to two and a half years, she still had some period of time to live.

It is quite true that this condition was not brought about as a result of the accident. Nevertheless, Dr. White gave the following answer to this question: "Q. What effect did the accident have upon that condition? A. This condition is primarily a condition of the peripheral nerves and runs its own course. I would not say that the accident had a definite—was a definite factor in the progress of the disease by itself, but it most certainly caused a psychic and nervous upset which has affected the patient in the presence of this condition in a rather disastrous degree."

I am a little doubtful about the testimony of Dr. Kinsley after carefully reading the same and recalling his examination on the witness-stand. It strikes me he wanted to make it appear to be a serious case and that his great ability was effecting a cure. For this reason he testified at first rather hesitatingly. When Mrs. Sparnon first came to see him she was unable to walk but later he managed to have her stand on her feet and wiggle her toes.

It is true Dr. White, Dr. Morrison, Dr. Mills and Dr. Quirk stated that she was suffering from an incurable disease, nevertheless, Dr. White's own testimony hereinbefore referred to shows that the accident had some effect on the plaintiff's condition.

Counsel for plaintiff cites the case of *Wilson* v. *Brown*, 7 *N. J. Mis. R.* 389. In that case the verdict was $3,500; and while no bones were broken, the plaintiff suffered a general shaking up and bruises, a minor concussion of the brain, with local injury to the nerves; she was ten days in the hospital, three weeks in bed at home, three months confined to the house, lost a great deal of income as a practical nurse because of her disability, and at the time of the trial, she testified she still did not have enough grip in her hand to lift a flat iron, and if any strength is required in her occupation of nursing, she has to call for help.

In the instant case, Mary Sparnon had no separate occupation, she was in bed only two days and her nervous con-

dition was not due particularly to the accident but to a previous condition.

Counsel for plaintiff also cites the case of *Taylor* v. *Anderson,* 8 *N. J. Mis. R.* 586. In that case the verdict of $3,000 was upheld where the proofs showed that a piece of flesh about the size of a silver dollar was sliced off of the plaintiff's forehead at the base of the hair line, leaving a raw opening which destroyed the flesh and resulted in a permanent scar at that point. In addition, there was a cut across the bridge of the nose, leaving another scar. Her left eyelid was cut open, necessitating four stitches to be taken in it, and there was a cut on the left side of her face, necessitating a couple of stitches there. The cuts healed in the course of time, but left permanent scars, thus seriously disfiguring the plaintiff's face. In view of this permanent disfigurement and of the pain and suffering resulting to the plaintiff from the accident, the award was considered moderate.

Even in this case last mentioned, the injuries appear to be more serious than in the case now before me.

I am of the opinion from all of the evidence before me that the verdict of $5,500 to Mary Sparnon is excessive. If Mary Sparnon will, within twenty days from the receipt of this memorandum, consent to a reduction of her verdict to $3,000, the rule to show cause will be discharged, otherwise the rule to show cause will be made absolute and a new trial granted.